[L. A. No. 18123. In Bank. Apr. 22, 1942.]

J. C. HIZAR, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Dempster McKee for Petitioner.

W. Eugene Craven for Respondent.

THE COURT.—This is a proceeding to review the recommendation of the Board of Governors of The State Bar recommending disbarment.

Petitioner, J. C. Hizar, is about seventy years of age and has been practicing law in California since 1894. He is charged with the commission of acts involving moral turpitude and with the violation of his oath as an attorney. The Local Administrative Committee in San Diego found that the petitioner was guilty of the offenses charged. On August 16, 1941, following a hearing the Board of Governors adopted the findings of the Local Administrative Committee and recommended that the petitioner be disbarred.

On the first charge the petitioner was found guilty of having forged numerous documents and of having falsely acknowledged these instruments for the purpose of deceiving the public. The findings show that Joseph W. Murphy, a client of the petitioner, died in 1929. He had been doing business as the Joseph W. Murphy Mortgage Company. He left con-

siderable property and mortgages to his wife and petitioner
became attorney for the estate and for the widow Bertha Mur-
phy. Early in 1930 Forest C. Walden, a brother-in-law of Mrs.
Murphy, came to San Diego from St. Louis where he had been
living, to assist Mrs. Murphy in the management of her affairs.
The business of the mortgage company had been inactive. It was
decided to continue it so Walden caused a certificate to be filed
showing that he was doing business under the fictitious name
of the Joseph Murphy Mortgage Company and that he was
the owner thereof. Mrs. Murphy turned over certain mort-
gages and property and capital to Walden to be used in con-
ducting the business.

In 1933 both Walden and Mrs. Murphy were sued by C. A.
Carlson and Eva Carlson in a wrongful death action. To avoid
financial responsibility Walden and Mrs. Murphy transferred
the real estate and mortgages to one Graybill, a nephew of Mrs.
Murphy who had come to San Diego from Wichita, Kansas, to
work for the mortgage company as a salesman. In 1934, Gray-
bill decided to go back to Kansas and Walden asked the peti-
tioner if he could secure some one to hold the assets in the place
of Graybill. James Jackson and William Kehoe were selected
by the petitioner and a certificate was filed showing Jackson
to be the owner and doing business as the Joseph P. Murphy
Mortgage Company. Most of the property was transferred
to Jackson and Kehoe. After this transfer it was necessary
from time to time to have deeds executed by the legal title
holders. The practice at the office of the mortgage company
was to prepare these instruments for signature and to send
them to petitioner's office. Petitioner would return them
after the signature and the acknowledgment had been made
and attached. A judgment was entered against Mrs. Murphy
and Walden in the wrongful death action but the judgment
was reversed. (*Carlson* v. *Murphy,* 8 Cal. App. (2d) 607 [47
P. (2d) 1100].)

In 1939 Walden was declared a bankrupt. The trustee in
bankruptcy took into his possession certain documents which
purported to be grant deeds and other instruments signed
by Jackson and Kehoe. The effect of these deeds was to re-
transfer to Mrs. Murphy or to her nominee all the property
which had been previously transferred by her to Jackson and
Kehoe. The petitioner acted as notary on these instruments
and it was found that neither Jackson nor Kehoe appeared

before him and acknowledged their signatures and that the signatures of Jackson and Kehoe were affixed to the instruments by the petitioner. It was established by the testimony of the petitioner that Jackson and Kehoe were not fictitious persons and there was no claim made by petitioner that he had authority to sign their names.

On the second charge it was found that the petitioner swore falsely before the referee in bankruptcy in that. he testified that these instruments were signed by Jackson and Kehoe as they purported to be and that they had in fact appeared before him when in fact they had not. It was found that this testimony was given for the purpose of deceiving the referee and misleading a judicial officer.

The petitioner testified that the documents in question were signed before him by Jackson and Kehoe and that the only testimony to the contrary was the testimony of two handwriting experts employed by The State Bar. Petitioner contends that the whole case against him depends upon the evidence given by these experts and that their testimony should not be permitted to be effective to support the findings as against his own testimony to the contrary, because such experts were, he asserts, more likely to favor the party who employed them. The petitioner concedes that the testimony of the experts, if credited, is sufficient to support the findings.

The record fails to disclose any satisfactory reason why such evidence should not be credited. Moreover, the committee based its findings not only on the testimony of the experts but also on the inconsistent statements by the petitioner as to the whereabouts of Jackson and Kehoe, the times and places where the instruments were purportedly signed, and other inconsistencies which indicated that he had forged the instruments. Undoubtedly the attitude and demeanor of the petitioner as he appeared and testified had an important bearing on his credibility. The committee was justified in finding that the petitioner had affixed the signtaures of Jackson and Kehoe to the instruments without their authorization.

In answer to the second charge, regarding the alleged false testimony of the petitioner before the referee in bankruptcy, petitioner contends that even conceding his testimony to be false no one was hurt or deceived thereby; that the Carlsons had lost their suit, were not creditors, and were not injured; that the trustee had in his possession all of the prop-

erty that was owned by the bankrupt and that it could not be said that any creditors were injured.

Conceding that no one suffered any pecuniary loss the fact remains that the petitioner upon oath falsely testified before the referee in bankruptcy with intent to mislead that public officer. The forging of the documents and the giving of false testimony were unlawful and dishonest acts and unquestionably involved moral turpitude. They were committed for the purpose of deceiving those who might examine the public records and to deceive a public officer. The fact that it might develop that no one had been injured in no way justified the artifice and false practices of the petitioner.

In his reply memorandum petitioner for the first time makes the contention that it was not shown that he did not have a power of attorney or authority otherwise to sign the instruments for Jackson and Kehoe and that it cannot therefore be said that he was guilty of forgery. The contention is without merit in view of the position of the petitioner throughout the proceeding that he did not affix the signatures and that Jackson and Kehoe appeared before him and signed the instruments.

Petitioner finally contends that undue emphasis has been placed upon his prior conviction of a felony in 1918 in the federal court for a violation of the Neutrality Act. However, it does not appear that any weight at all has been given to this conviction. The conviction was not referred to at the hearing before the local administrative committee. It was mentioned at the hearing before the Board of Governors, but it does not appear that any controlling significance was accorded to it by that body. The brief presented by The State Bar does not even mention this prior conviction and the case against the petitioner is based entirely on the two charges considered herein.

The petitioner has not sustained the burden of showing that the findings and recommendations of The State Bar are unsupported by the record.

It is therefore ordered that the petitioner be disbarred from the further practice of law in this state, and that his name be stricken from the roll of attorneys and counselors at law of the State of California at the expiration of thirty days from and after the filing of this order.